I. Raymond Kremer, Judge of the First Judicial District on Behalf of Himself and all Other Judges and Justices Similarly Situated, Petitioner *v.* State Ethics Commission et al., Respondents.

Argued September 9, 1980, reargued December 10, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, CRAIG, MAC-PHAIL, WILLIAMS, JR. and PALLADINO.

*I. Raymond Kremer,* petitioner, for himself.

*Nancy D. Wasser,* Assistant District Attorney, with her *Sandra S. Christianson,* General Counsel, State Ethics Commission, for respondents.

OPINION BY JUDGE ROGERS, January 20, 1981:

By Amended Petition for Review addressed to this court's original jurisdiction, the Honorable I. RAY-

MOND KREMER,[1] a Judge of the Court of Common Pleas of Philadelphia County, seeks injunctive and declaratory relief which would prevent the respondents, The State Ethics Commission, the Attorney General of Pennsylvania and the District Attorney of Philadelphia County from enforcing the financial disclosure provisions of the Act of October 4, 1978 (Ethics Act) P.L. 883, 65 P.S. §401 *et seq.*, and which would declare that the Ethics Act, particularly as it may require judges to file statements of financial interests, is unconstitutional. The State Ethics Commission has filed a preliminary objection in the nature of a demurrer.[2]

Section 4(d) of the Ethics Act, which is central to the litigation, provides:

> No public official shall be allowed to take the oath of office or enter or continue upon his duties, nor shall he receive compensation from public funds, unless he has filed a statement of financial interests with the commission as required by this act.

Section 5 of the Ethics Act requires that the person filing a statement of financial interests disclose annually with regard to the person filing and members of his immediate family: all direct or indirect interests in real estate sold, purchased, leased to or from or condemned by the Commonwealth; the name and address of every creditor to whom is owed more than $5000; the name and address of any person who is the

---

[1] Judge KREMER sues also as representative of the class of "judges and justices who may be affected by the Ethics Act" and the Amended Petition for Review includes class action allegations.

[2] The Attorney General of Pennsylvania filed an Answer to the Petition for Review. The District Attorney of Philadelphia County first filed preliminary objections and later an Answer.

source of income totaling $500 or more; the name and address of any person from whom a gift or gifts valued at $200 or more was received; the source of any honorarium in excess of $100; and all business affiliations.

Section 9 of the Ethics Act provides criminal sanctions for failing to file the statement of financial interests; and as reference to Section 4(d) above will disclose, a public official who fails to file a statement of financial disclosure may not "continue upon his duties".

Judge KREMER alleges and we must therefore accept as facts that The State Ethics Commission has distributed to judges for completion and filing[3] forms of statements of financial interests. Indeed, The State Ethics Commission's demurrer includes the statement that Judge KREMER, as a public official, is required by the Ethics Act to file a statement of financial interests.

Because we hold that the disclosure provisions of Sections 4(d) and 5 of the Ethics Act are unconstitutional as infringements upon the Pennsylvania Supreme Court's inherent and exclusive power to govern the conduct of all courts and the judges thereof, it is not essential that we dispose of Judge KREMER's other attacks upon the Ethics Act. In the interest of completeness we will, however, deal with them briefly. It is first asserted that the Ethics Act does not require public officials, as distinguished from public employees, to file statements of financial interests unless they have become candidates and have been elected to public office after the effective date of the Ethics Act. We disagree. It is true that subsections

---

[3] This court, per President Judge CRUMLISH after hearing preliminarily enjoined the administration and enforcement of Section 4(d) pending adjudication by this court.

(a), (b) and (c) of Section 4, dealing respectively with public employees, candidates for public office, and candidates for public office nominated by another public official or governmental body, expressly state that the employee or candidate shall file the statement of financial interests and that subsection (d) reads only that no public official shall enter or continue upon his duties (or receive compensation) unless he has filed the statement. However, we agree with The Ethics Commission that the Ethics Act, being remedial, is entitled to a liberal construction (despite the fact that it contains penal provisions) at least where, as here, the issue of whether a particular public official is or is not required to comply is presented to a court only for declaratory relief. It has been decided that judges are public officials as defined in the Ethics Act. *Wajert v. State Ethics Commission*, 47 Pa. Commonwealth Ct. 97, 407 A.2d 125 (1979), *aff'd*      Pa.    , 420 A.2d 439 (1980). It would be grossly illiberal, if not absurd, to construe Section 4(d) to provide that although a public official may not continue upon his duties if he has not filed a statement of financial interests, he is nevertheless not required to file one because the statute does not expressly so state.

Judge KREMER also asserts that the disclosure provisions of the Ethics Act unconstitutionally impose the burden of an additional invasion of privacy on his right to continue as judge after election and after financial sacrifice in taking the office. We have given careful consideration to the averments of the Amended Petition for Review in this regard and they fail to shake our conclusion, made in *Snider v. Shapp*, 45 Pa. Commonwealth Ct. 337, 405 A.2d 602 (1979), that the financial disclosure provisions of the Ethics Act do not constitute an unconstitutional invasion of

privacy. *See also Opinion of The Justices to the Senate,* Mass. , 376 N.E.2d 810 (1978).

As earlier stated, we have concluded that the disclosure requirements of the Ethics Act as applied to Judge KREMER and other judges and justices infringes upon the Supreme Court's inherent and exclusive power to govern the conduct of judges. The Pennsylvania Constitution provides that the judicial power of the Commonwealth shall be vested in a unified judicial system (Article V, Section 1); that the judicial power of the Commonwealth shall be reposed in the Supreme Court (Article V, Section 2); that the Supreme Court shall exercise general supervisory and administrative authority over all the courts (Article V, Section 10(a)); that there shall be a Judicial Inquiry and Review Board of nine members, five appointed by the Supreme Court (Article V, Section 18(a)); that the Judicial Inquiry and Review Board may investigate and hear matters of wrongdoing on the part of judges and recommend the suspension, removal, discipline or compulsory retirement of judges (Article V, Sections 18(d)(f)(g)); and that the Supreme Court shall review the board's proceedings and order disciplinary action or *wholly reject* the board's recommendations. Article V, Section 18(h). Article V, Section 10(c) speaks directly to the point at issue, as follows:

*The Supreme Court shall have the power to prescribe general rules governing* practice, procedure and the *conduct of all courts,* justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of jus-

tice shall require, and for admission to the bar and to practice law, *and the administration of all courts and supervision of all officers of the Judicial Branch,* if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. *All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.* (Emphasis supplied.)

The ineluctable conclusion to be drawn from these provisions is that the Supreme Court and it alone may govern the conduct of judges in the performance of their work.

*In Re 42 Pa. C. S. §1703,* 482 Pa. 522, 394 A.2d 444 (1978), is a letter of address from the Justices of the Supreme Court to the representatives of the other two branches of Pennsylvania government concerning a statute enacted by the Legislature imposing upon the Supreme Court by name the duty of compliance with the so-called Sunshine Law in exercising its rule-making powers. The Justices in holding the statute as applied to it unconstitutional, said, concerning the Supreme Court's rule-making authority, that "there is simply no substantial support for the proposition that the grant of authority in Article V, §10(c) is anything other than exclusive"; and that the "constitution's explicit statement [in Article V, Section 10(c)] that court-made rules will prevail and statutes that might be inconsistent with them would be incongruous with a scheme in which the Legislature exercised concurrent rule-making power"; and that "[t]his court has noted, 'a power does not inhere

to the legislature if it has specifically been . . . entrusted to another co-equal branch of government,' Commonwealth v. Sutley, 474 Pa. 256, 260, 378 A.2d 780, 788 (1977)''; and finally that ''. . . what is to be protected is not per se the power of the Supreme Court . . . but rather the principle that the power to make rules is that of the judiciary and the judiciary alone. Viewed from this perspective, it is understandable how the separation of powers doctrine has been thought to allow and indeed mandate 'the Court . . . to resist temperately, though firmly, *any* invasion of its province, whether great or small.' '' With respect to another category of court officer—attorneys —the Supreme Court declared in *Wajert v. State Ethics Commission, supra,* that ''we agree with the Commonwealth Court's reasoning that the application of this statute [Section 3(e) of the Ethics Act, forbidding a former judge to represent a person in the Court with which he was associated for one year after leaving the bench] to a former judge constitutes an infringement on the Supreme Court's inherent and exclusive power to govern the conduct of those privileged to practice law in this Commonwealth'' and that ''[t]here can be no doubt that the statute has infringed on this Court's *exclusive* power to govern the conduct of an attorney, and is, hence, unconstitutional.'' (Emphasis in original.)

Section 1 of the Ethics Act declares that the purpose of the enactment is the assurance to the people that the financial interests of holders of public office present neither a conflict nor the appearance of a conflict with the public trust. The Supreme Court by its Code of Judicial Conduct adopted with the same purpose five years earlier than the Ethics Act deals extensively with just the mischief which the disclosure provisions of the Ethics Act, if applied to

judges, would also address. Canon 3C of the Code of Judicial Conduct requires a judge to disqualify himself if he, his spouse or minor child has a substantial financial interest in a matter before him and to inform himself about his and his family's financial interests, defining a financial interest as the ownership of any substantial interest or a relationship in the affairs of a party in litigation. Canon 5C requires a judge to refrain from financial and business dealings which might reflect adversely on his impartiality and to manage his financial affairs to minimize the number of cases in which he is disqualified by divesting himself of investments and other financial interests that might require frequent disqualification.

Our conclusions that the Supreme Court has and has exercised inherent and exclusive power to regulate the conduct of judges, including the subject of real and apparent conflicts of interest, and that the financial disclosure provisions of the Ethics Act are unconstitutional for impinging on that power, comport with those reached by the courts of other states. The Florida Supreme Court in *In Re Florida Bar,* Fla. , 316 So. 2d 45 (1975) struck down portions of that state's ethics enactment in relation to judges (and lawyers), stating: ''The legislature has no power under . . . [the] Florida Constitution to adopt an ethical code of conduct which would govern the judiciary, whether it concerns financial disclosure or otherwise.'' In *Dunphy v. Sheehan,* 92 Nev. 259, 549 P. 2d 332 (1976), the Nevada Supreme Court concluded that the exclusion by the Legislature of the judiciary from that State's Ethics Law was ''constitutionally mandated''.

Having concluded that Sections 4(d) and 5 of the ethics law may not constitutionally be applied to judges, we overrule the State Ethics Commission's preliminary objection.

## ORDER

AND Now, this 20th day of January, 1981, we overrule the preliminary objections of the State Ethics Commission and direct the Ethics Commission to file an Answer within thirty (30) days.

---

DISSENTING OPINION BY JUDGE CRAIG:

We cannot overlook the point that Pa. Const. art. V, §10(c), as adopted by the citizens of the Commonwealth to invest the Supreme Court with the power of governance over the conduct of all courts, concludes by stating:

All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

That sentence makes clear that legislation relating to judges, as part of the class of all public officials, is not barred except as it may conflict with judicial rules of conduct.

The financial disclosure provisions of the Ethics Act do not conflict with the provisions of the Code of Judicial Conduct which require judges to eschew conflicts of interest. The financial disclosure provisions of the statute implement the judicial canons in a consistent way. Public disclosure of judges' interests would serve to inform legal counsel, who have the duty and right to move for the disqualification of judges where appropriate.

Most judges are conscientious about preventing conflicts of interest, as are most other public officers and employees. A law which requires foreclosure by legislators, who act collectively, and by administrators, who act ministerially, appropriately may also require like disclosure by judges, who often act individually to make significant decisions affecting personal and property rights.

*Wajert v. State Ethics Commission,*    Pa.    , 420 A.2d 439 (1980) is distinguishable. Application of the Ethics Act to shut the door of a court against the practice of law therein by an attorney is clearly in conflict with the actual judicial action which explicitly provided for the admission of that very attorney to practice before that court.

However, until the Supreme Court makes express provision for financial disclosure by judges, the Ethics Act disclosure requirement is not inconsistent and therefore is not ousted by the governing provision of the constitution.[1]

---

[1] Of persuasive value, although not binding here, is *DuPlantier v. United States*, 606 F.2d 654 (5th Cir. 1979), *cert. den.*    U.S. , 49 U.S.L.W. 3481 (Dkt. No. 79-1180, filed January 12, 1981). *DuPlantier*, involving the federal statute requiring financial disclosure by federal judges, in addition to agreeing with the majority here that no constitutional right of privacy is violated, also held that the federal statute "does not violate the doctrine of separation of powers" derived from the federal constitution. *DuPlantier*, 606 F.2d at 668.

Although we are dealing with the words of the state constitution rather than those of the United States Constitution, the latter notably contains no expression suggesting that consistent laws are saved; the federal constitution merely states that the legislative, executive and judicial powers are "vested", respectively, in the Congress, President and Supreme Court. U.S. Const. Art. I, §1, Art. II, §I, Art. III, §I.