**[J-38-2017] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| DIANA SHEARER AND JEFF SHEARER, | : | No. 93 MAP 2016 |
| | : | |
| Appellants | : | Appeal from the Order of the Superior |
| | : | Court at No. 665 MDA 2015 dated |
| | : | March 9, 2016 Affirming the Order of the |
| v. | : | Court of Common Pleas of Lebanon |
| | : | County, Civil Division, at No. 2012- |
| | : | 01286 dated March 16, 2015, exited |
| SCOTT HAFER AND PAULETTE FORD, | : | March 17, 2015. |
| | : | |
| Appellees | : | ARGUED: May 9, 2017 |

**CONCURRING OPINION**

**JUSTICE WECHT**                                                              **DECIDED: January 18, 2018**

I join the learned Majority in full. I write separately to express concerns regarding some aspects of this case.

The trial court issued a protective order disallowing Appellants' counsel or representative from attending the standardized testing based upon Pa.R.C.P. 4012's grant of authority to a trial court to enter protective orders as justice requires when good cause is shown. The trial court's determination that Appellees showed good cause was based, in part, upon the ethical grounds that Dr. Malatesta asserted. I express no judgment on the merits of the trial court's finding. Nonetheless, I would caution courts to subject such claims to careful scrutiny.[1] Otherwise, expert witnesses, rather than judges, will define the scope and process of discovery.

---

[1]     This is especially true where, as here, there is some disagreement as to which ethical standards apply. *See* Brief of Appellants at 20-21 (contending that Dr. Malatesta relied upon outdated standards, and relied upon therapeutic standards rather than forensic standards). The difference between therapeutic (treatment-related) standards (continued…)

Relatedly, I detect a palpable risk that reliance upon standards written by non-governmental organizations, such as the APA and NAN in this case, may run afoul of the non-delegation doctrine. Dr. Malatesta was concerned about the APA guidelines, not only for their ethical implications, but because the Commonwealth of Pennsylvania's State Board of Psychology has made compliance with the APA's ethical guidelines and code of conduct mandatory by incorporating those provisions into its Code of Ethics. *See* 49 Pa. Code § 41.61(3)(e). Non-compliance is grounds for disciplinary action. *See* 63 Pa.C.S. § 1208(a)(9); Brief of Appellees at 30; Amicus Brief of the Pennsylvania Psychological Association at 16-18.

The General Assembly may authorize a board to develop ethical guidelines or codes. *See Pa. State Assoc. of Twp. Supervisors v. Thornburgh*, 405 A.2d 614, 617 (Pa. Cmwlth. 1979). However, the General Assembly or the Board may not delegate that responsibility to a third party without providing clear guidelines. *See State Bd. of Chiropractic Examiners v. Life Fellowship*, 272 A.2d 478, 481 (Pa. 1971); *see also Protz v. W.C.A.B.. (Derry Area Sch. Dist.)*, 161 A.3d 827, 835 (Pa. 2017) (holding that statute designating the "most recent edition" of the American Medical Association guide as the source for determining percentage of disability for workers' compensation purposes was an impermissible delegation because the legislature did not set any particular policy or "prescribe any standards to guide and restrain the AMA's discretion"). While we have neither the record nor the advocacy in this case to resolve the delegation issue or even

---

(…continued)
and forensic (those evaluations and assessments performed or opinions developed for use in court) standards will often be relevant (and at times critical) in these types of evaluations.

reach its merits, boards and agencies should be cognizant of the issue and should attend diligently to its implications.[2]

---

[2] *See* David N. Wecht & Jennifer H. Forbes, *Discipline of Pennsylvania Psychologists Relies Upon an Unlawful Delegation of Rulemaking Authority*, PENNSYLVANIA FAMILY LAWYER 201 (2010).