[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs appeal pursuant to the Uniform Administrative Procedure Act (UAPA), § 4-166 et seq. § 4-183, from a decision by the State of Connecticut Elections Enforcement Commission (Commission) finding them in technical violation of Connecticut election laws (General Statutes § 9-333w) for failing to indicate "Paid for by" on certain press releases. The Commission's decision of March 18, 1998 did not fine or otherwise penalize the plaintiffs, merely ordering their prospective compliance with the statute.
The plaintiffs were candidates for Selectmen position in the November 4, 1997 municipal election in the Town of Canaan, Connecticut. Complaints were made against the plaintiffs on September 16, 1997 and October 2, 1997.[1] The latter complaint was treated as an amendment by the Commission. The complaints were initiated by a political opponent. One of the allegations of the complaint was that transmittal letters in certain mailings should have contained the attribution language ("Paid for by") that the insert included. The remaining allegation related to press releases of September 3 and September 12, 1997, which were faxed to four local newspapers. The plaintiffs' names and telephone numbers were noted but the specific attribution "Paid for by" was omitted.
The complaint to the Commission was heard as a contested case on January 14, 1998. The Commission hearing officer found that the plaintiffs had met the attribution requirements of § 9-333w[2] with respect to the transmittal letters which included a properly attributed enclosure. The conclusion as to the faxed press releases was set forth in paragraph 17 of that decision:
 It is therefore found that the failure of the September 3 and September 12 press releases to contain the words "Paid for by" and the names and addresses of both Respondents constitutes a
CT Page 14947
 violation of Section 9-333w. These violations were of a technical nature by virtue of the fact that all four newspapers receiving the releases knew, or readily could have found out, that the communications were prepared and paid for by the Respondents as both Respondents' names and telephone numbers appeared on the releases as "Contacts". Similarly the fax source number appears on both releases by reference to Ms. Seymour's name.
(Return of Record (ROR) R 67, p. 4.)
The Commission's order based on the technical nature of the violation was: "That the Respondents (Plaintiffs in this case) shall henceforth comply with the disclosure requirements of Section 9-333w of the Connecticut General Statutes by placing on any typed, written or printed press release the words of attribution required by Section 9-333w."
The plaintiffs though not subject to any sanction by the order are aggrieved because of the risk, however remote, of criminal penalties for elections law violation, General Statutes § 9-333y. See, on aggrievement Board of Pardons v.Freedom of Information Commission, 210 Conn. 646, 650
(1989); State Library v. Freedom of InformationCommission, 240 Conn. 824, 834 (1997).
The plaintiffs in their appeal essentially raise three claims all of a constitutional nature: (1) a challenge to the legislative control over the Commission's membership; (2) a challenge to the statutory authorization of disclosure of complaints of election law violations and (3) a challenge to the alleged selective application of the election laws to plaintiffs' press releases.
The plaintiffs' challenge to the Commission's composition is based on the separation of power provisions of Articles Second and Fourth of the Connecticut Constitution. Article Fourth vests executive power in the Governor. Article Second provides for the separation of powers among the Executive, Legislative and Judicial branches of government.
The Commission consists of five members, four of whom are appointed by the Legislature, § 9-7(a). The remaining member CT Page 14948 is appointed by the Governor.
The plaintiffs assert that the Commission which performs an executive branch law enforcement function, is undermined by legislative appointment of the majority of its members.
The plaintiffs find support for this claim under a federal case, Buckley v. Valeo, 424 U.S. 1 (1976). TheBuckley decision found the original Federal Elections Commission unconstitutional because of a similarly legislatively appointed majority membership.
The plaintiffs acknowledge that Buckley was decided on the basis of the Appointments Clause of the United States Constitution, Art. II § 2 clause 2[3] which has no counterpart in the Connecticut Constitution. The challenge to the Commission thus rests solely on a separation of powers analysis. There is no Connecticut precedent which suggests that legislative appointments of commissions which serve executive functions violates the separation of powers provisions. This is the case even in the face of numerous instances of legislative appointments of similar commission memberships.[4]
The long Connecticut history of shared appointive power was noted in Connecticut Attorney Generals Opinions (Attorney General Opinion, February 11, 1996, and Opinion 90-13, April 17, 1990).
The Connecticut Supreme Court has repeatedly held: "Recognizing that executive, legislative and judicial powers frequently overlap, we have consistently held that the doctrine of the separation of powers cannot be applied rigidly."Bartholomew v. Switzer, 217 Conn. 671, 676 (1991);University of Connecticut Chapter AAUP v. Governor,200 Conn. 386, 394 (1986); Adams v. Rubinow, 157 Conn. 150,155 (1968); In Re Application of Clark, 65 Conn. 17, 38
(1894). "As we have recognized, the great functions of government are not divided in any such way that all acts of the nature of the function of one department can never be exercised by another department, such a division is impractical, and if carried out would result in the paralysis of government." Massameno v.Statewide Grievance Committee, 234 Conn. 339, 533 (1995).
In states that have considered the separation of powers challenge to a shared legislative executive appointive power, the plaintiffs can find no comfort. See Board of Ethics v.
CT Page 14949Green, 566 So.2d 623 (La. 1990); Pennsylvania StateAssn. of Township Supervisors v. Thornbury, 405 A.2d 614
(Pa. Conn. 1979) aff'd 437 A.2d 1 (1979); 1 N. Singer, Sutherland Statutes and Statutory Construction, § 3.20 at 76 (4th ed. 1985).
The federal law is distinguishable on the basis of the appointments clause, the majority rule in other states supports a shared appointive power and Connecticut authority rejects a rigid application of the separation of powers doctrine.
The plaintiffs have failed to demonstrate the unconstitutional composition of the Commission.
The plaintiffs allege that pre-hearing publicity violated their constitutionally protected freedoms of speech and association, and their Fourteenth Amendment rights to due process of law. The crux of this claim is that complaints to the Commission resulted in a disclosure of political associations and unfavorable publicity concerning unsubstantiated charges.
The plaintiffs correctly cite NAACP v. Alabama,357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) for the proposition that political association is protected from government interference. However, NAACP v. Alabama, is clearly distinguishable from the instant case. NAACP
involved a state court order which required the civil rights organization to disclose its membership. The hostile state environment and limited legitimate interest of the state in membership rosters,[5] contrasts markedly with the incidental nature of disclosure of names in the Commission's enforcement proceeding. Subjecting the statute § 9-7(f) to the strictest scrutiny does not invalidate it. The state has a critical interest in the electoral process, which justifies any indirect limit on political association which may incidentally result from disclosure of the names of persons associating for political purposes.
Section 9-7b(14) merely reflects the public policy in favor of open government and free access to public records. The overarching policy of the Freedom of Information Act, § 1-10
et seq., (FOIA) is "the open conduct of government and free public access to government records." Wilson v. FOIC,181 Conn. 324, 328 (1986); Maher v. FOIC,192 Conn. 310, 315 (1984); Chairman v. FOIC, 217 Conn. 193, 196
CT Page 14950 (1991). "The general rule under the [FOIA] is disclosure with exceptions to the rule being narrowly construed." Perkins v.FOIC, 228 Conn. 158, 167 (1993); Superintendent v.FOIC, 222 Conn. 621, 626 (1993); Rose v. FOIC,221 Conn. 217, 232 (1992); New Haven v. FOIC,205 Conn. 767, 775 (1988). Section 9-7(b)(14) merely applies the FOIA principles to Commission records, with a limited exception for criminal investigations. The plaintiffs have made no showing nor do they even allege political bias as motivation by the Commission.
The plaintiffs selective prosecution claim also fails. In order to demonstrate selective prosecution the plaintiffs must show (1) that similarly situated persons were treated differently; and (2) that such selective treatment was based on impermissible consideration or to punish the exercise of constitutional rights or acts of malicious or bad faith intent.Schnabel v. Tyler, 230 Conn. 735, 762 (1994); FSKDrug Corp. v. Perales, 960 F.2d 6, 10 (2d Cir. 1992);LeClair v. Saunders, 627 F.2d 606, 608 (2d Cir. 1980).
The plaintiffs claim that candidates for the Connecticut State Senate sent similar press releases which lacked for "Paid for by" attribution. The plaintiffs in no instance are able to identify any other press release or candidate that was brought to the Commission's attention and treated differently. Similar situated persons would be candidates against whom a complaint was filed with the Commission.
The plaintiffs assert a political outsider status as a motivation, but fail completely to assign such intent to the Commission. The motivation of their political opponents in Canaan is not automatically attributable to the State.
The plaintiffs also attack the applicability of § 9-333w to the "press releases." The plaintiffs' claim that the exception of § 9-333w(c)[6] is applicable. This exception is clearly directed to the publisher not the candidate. The freedom of a newspaper to publish materials originating in a press release does not relate back to a candidates obligation to include the "Paid for by" attribution on its materials.
The decision is affirmed and the appeal is dismissed.
Robert F. McWeeny, J. CT Page 14951